UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re: MTN 15 ) | |
| ) | |
| US FIDELIS, INC., ) | No. 10-41902-705 |
| ) | |
| Debtor. ) | |
| ) | |

**INTERIM ORDER (I) AUTHORIZING SECURED POSTPETITION FINANCING ON A SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (III) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364, AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)**

Upon the motion (the "Motion") dated March 1, 2010, US Fidelis, Inc. ("Debtor") is:

(a) seeking this Court's authorization pursuant to Sections 105, 363(c), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), for the Debtor, inter alia, (i) to obtain secured postpetition financing (the "Secured Postpetition Financing") up to an aggregate principal amount not to exceed $3,000,000.00 from Mepco Finance Corporation ("Mepco") and for the Debtor to execute a Credit Agreement and Note with respect to the Secured Postpetition Financing, the terms of which are summarized herein, (ii) to grant Mepco security interests in substantially all of the Debtor's presently owned and after-acquired property, including by not limited to the funds in reserve or deposit accounts held by third party institutions, to secure the Debtor's obligations under the Secured Postpetition Financing and all obligations of the Debtor under the Credit Agreement (the Credit Agreement and all ancillary documents at any time executed in connection therewith, collectively, the "Loan Documents"), and (iii) to grant Mepco priority in payment with respect to such obligations over any and all

administrative expenses of the kinds specified in Bankruptcy Code §§503(b) and 507(b), other than in respect of the Carve-Out (as defined below);

(b) seeking this Court's authorization, pursuant to Bankruptcy Code §363(c), to use Cash Collateral (as defined below) and, pursuant to Bankruptcy Code §§361, 363(e) and 364(d), to provide adequate protection to Mepco, in its capacity as Prepetition Lender, with respect to any diminution in the value of the Prepetition Lender's interests in the Prepetition Collateral (as defined below) resulting from the priming liens and security interests to be granted herein pursuant to Bankruptcy Code §364(d) to secure the Secured Postpetition Financing, the use of the Cash Collateral, the use, sale or lease of the Prepetition Collateral (other than the Cash Collateral) or the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a);

(c) seeking a preliminary hearing (the "Preliminary Hearing") on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001 (this "Order") authorizing the Debtor, inter alia, to borrow from Mepco up to an aggregate of $788,000.00 pending the Final Hearing referred to below; and

(d) requesting that a final hearing (the "Final Hearing") be scheduled, and that notice procedures in respect of the Final Hearing be established by this Court to consider entry of a final order (the "Final Order") authorizing on a final basis, inter alia, the Secured Postpetition Financing and the use of the Cash Collateral; and due and sufficient notice of the Motion and the Preliminary Hearing under the circumstances having been given; and the Preliminary Hearing on the Motion having been held before this Court on March 3, 2010; and upon the entire record made at the Preliminary Hearing, and this Court having found good and sufficient cause appearing therefore,

IT IS HEREBY FOUND that:

A. On March 1, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is continuing in possession of its property, and operating and managing its business, as Debtor in possession pursuant to Bankruptcy Code §§1107 and 1108.

B. This Court has jurisdiction over this Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2).

C. Pursuant to that certain Dealer Agreement dated as of April 1, 2009 (the "Dealer Agreement") and that certain Agreement dated as of October 22, 2009 (the "Forbearance Agreement"), Mepco extended financial accommodations and provided financial assistance to or for the benefit of the Debtor. All such financial accommodations owing under, or in connection with, the Dealer Agreement and the Agreement (collectively, the "Prepetition Loan Documents") are hereinafter referred to as the "Prepetition Obligations."

D. Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 19), the Debtor admits that, in accordance with the terms of the Prepetition Loan Documents, the Debtor is truly and justly indebted to Mepco without defense, counterclaim or offset of any kind, and the Debtor admits that as of the Petition Date the Debtor was liable to Mepco in respect of the financial accommodations and assistance made by Mepco to the Debtor pursuant to the Prepetition Loan Documents in the aggregate principal amount of approximately $17,727,396.69 plus accrued and unpaid interest thereon and fees.

E. Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 19), the Debtor further admits that the Prepetition

3

Obligations are secured by valid, perfected, enforceable, first-priority liens and security interests granted by US Fidelis, Inc. to Mepco upon and in substantially all of the assets and property of US Fidelis, Inc. (the "Prepetition Collateral"), including without limitation, goods, inventories, equipment, accounts, chattel paper, general intangibles and proceeds of the foregoing. All of the cash of US Fidelis, Inc. constitutes Prepetition Collateral or the proceeds of the Prepetition Collateral and, therefore, is cash collateral of Mepco, as a Prepetition Lender, within the meaning of Bankruptcy Code §363(a) (the "Cash Collateral"). Mepco, as Prepetition Lender, is entitled, pursuant to Bankruptcy Code §§361 and 363(e), to adequate protection of its interest in the Prepetition Collateral, including for the use of the Cash Collateral, the use, sale or lease of the Prepetition Collateral (other than the Cash Collateral) and the imposition of the automatic stay.

F. The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business without the Postpetition Financing and the use of the Cash Collateral. The Debtor's ability to preserve their relationship with customers who purchased vehicle service contracts, to pay its employees and to otherwise finance its operations, is essential to the Debtor's continued viability. In addition, the Debtor's need for financing is critical and immediate. In the absence of the Postpetition Financing and the use of the Cash Collateral, serious and irreparable harm to the Debtor and its estate would occur. The preservation and maintenance relations with customers who purchased vehicle service contracts, the preservation of the going concern value of the Debtor and the reduction of claims against the Debtor are of utmost significance and importance to a successful reorganization of the Debtor under Chapter 11 of the Bankruptcy Code.

G. Given its current financial position and status of operations, the Debtor cannot obtain unsecured credit allowable under Bankruptcy Code §503(b)(l) as an administrative

expense. Financing on a postpetition basis is not otherwise available without the Debtor (i) granting, pursuant to Bankruptcy Code §364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§503(b) and 507(b), other than as described below in respect of the Carve-Out, (ii) securing, pursuant to Bankruptcy Code §§364(c) and (d), such indebtedness and obligations with first priority security interests in and liens on substantially all of the Debtor's assets as described below, and (iii) providing for adequate protection of Mepco's interests, as Prepetition Lender, as described below.

H. Notice of the Preliminary Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to Mepco and (iii) creditors holding the 20 largest unsecured claims against the Debtor or their counsel, if known. No creditors' committee has been appointed in this Chapter 11 Case. Under the circumstances, such notice of the Preliminary Hearing and the relief requested in the Motion complies with the requirements of Bankruptcy Code §§105, 364(c) and 364(d) and Bankruptcy Rules 2002 and 4001(c).

I. Based on the record presented to the Court by the Debtor at the Preliminary Hearing, the Secured Postpetition Financing has been negotiated in good faith and at arm's length between the Debtor and Mepco, and any credit extended and loans made to the Debtor pursuant to the Secured Postpetition Financing or the Loan Documents shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code §364(e).

J. Based on the record presented to the Court by the Debtor at the Preliminary Hearing, the terms of the Secured Postpetition Financing appear to be fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are

supported by reasonably equivalent value and fair consideration.

K. The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). The permission granted herein to enter into the Secured Postpetition Financing and obtain funds thereunder, and to use the Cash Collateral, is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that good and sufficient cause has been shown for entry of this Order, and that entry of this Order is in the best interest of the Debtor's estate and creditors as its implementation will, among other things, allow for the continued operation of the Debtor's business and enhance the Debtor's prospects for successful reorganization.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefore;

IT IS HEREBY ORDERED that:

1. The Motion is granted, subject to the terms and conditions set forth in this Order.

2. The Debtor is expressly authorized and empowered to execute and deliver the Loan Documents. The Debtor is authorized and directed to comply with and perform all of the terms and conditions of the Loan Documents, and the Debtor is directed to repay amounts borrowed, with interest, to Mepco in accordance with and subject to the terms and conditions set forth in the Loan Documents and this Order. The Debtor is further authorized and directed to pay all facility, commitment and other fees and expenses, including without limitation, all reasonable fees and expenses of professionals engaged by Mepco, in accordance with the terms of the Loan Documents. All loans made under the Loan Documents (the "Loans"), interest accrued thereon and all fees, costs, expenses, indebtedness, obligations and liabilities of the

Debtor to Mepco, including the reasonable fees and costs of professionals engaged by Mepco, under the Loan Documents and this Order are hereinafter referred to as the "Obligations."

3. The Debtor is expressly authorized to borrow from Mepco, on the terms and subject to the conditions set forth in the Loan Documents and this Order, not more than $788,000.00 under the Loan Documents pending the Final Hearing. The Debtor is authorized to use the proceeds of the Loans and to use the Cash Collateral in the operation of the Debtor's business and for payment of Chapter 11 expenses, including professional fees, in each case in accordance with the budget attached hereto as Exhibit A (the "Budget") and subject to the Loan Documents and this Order; provided, that (i) use of the funds advanced under the Loan or use of the Cash Collateral is consistent with the terms of the Loan Documents and this Order and will be used to pay when due expenses of the types set forth in the Budget and (ii) any requested Loan is made only after the Debtor's use of all available Cash Collateral.

4. If an Event of Default (as defined in the Loan Documents) occurs, subject to applicable notice requirements contained in the Loan Documents, Mepco may terminate the Postpetition Financing (the date of any such termination, the "Termination Date") and declare the Loans to be immediately due and payable, and the automatic stay pursuant to Bankruptcy Code §362(a) shall be deemed lifted and modified without further order of this Court to permit Mepco to exercise any and all of their rights and remedies under the Loan Documents and this Order. In addition, the Debtor's right to use the Cash Collateral shall terminate automatically on the earlier to occur of (i) the third business day after Mepco provides written notice to the Debtor, the United States Trustee and any statutory committee appointed in this Chapter 11 Case (each, a "Committee") of the occurrence of an Event of Default and that such use of Cash

Collateral shall terminate as a result thereof or (ii) the Maturity Date (as defined in the Loan Documents).

5. Notwithstanding anything herein to the contrary, no Loans, Collateral (as defined below), Cash Collateral or any portion of the Carve-Out may be used to object to or contest in any manner, or raise any defenses to, the validity, perfection, priority, extent or enforceability of the Prepetition Obligations, the Obligations or the liens securing the Prepetition Obligations or the Obligations, or to assert any claims or causes of action against Mepco; provided, however, fees and expenses of the professionals of a statutory committee appointed by Order of this Court (the "Committee") may use a portion of the Carve-Out, in an aggregate amount not to exceed $5,000.00, solely to investigate the Prepetition Obligations or the liens securing the Prepetition Obligations.

6. In accordance with Bankruptcy Code §364(c)(1), subject to Paragraph 7 below, the Obligations shall constitute claims with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code §§105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 (the "Superpriority Claims"), and shall at all times be senior to the rights of the Debtor and any successor trustee or any creditor in this Chapter 11 Case or in any subsequent proceedings under the Bankruptcy Code. Subject only to the Carve-Out, no cost or expense of administration under Bankruptcy Code §§105, 364(c)(1), 503(b), 506(c), 507(b) or otherwise, including those resulting from the conversion of this Chapter 11 Case pursuant to Bankruptcy Code §1112, shall be senior to, or pari passu with, the Superpriority Claims of Mepco arising out of the Obligations.

7. As security for the Obligations, Mepco shall have and is hereby granted (effective upon the date of this Order and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid and perfected security interests in and liens on (the "Liens") all present and after-acquired property of the Debtor of any nature whatsoever, including, without limitation, all tangible and intangible personal property and fixtures, all promissory notes, leasehold interests, all cash, money, certificates, investment property, securities, chattel paper and other property contained in any account maintained by or for the benefit of the Debtor, including all cash, reserves and cash equivalents maintained in any account maintained at any financial institution, insurance company or other institution (but excluding cash and deposits which are not owned, but are held in trust, by Debtor for the benefit of its employees), letter of credit rights, books, records, writings, data bases, customer lists, intellectual property, insurance policies, including any cash surrender value, and commercial tort claims (collectively with all proceeds and products of any or all of the foregoing, the "Collateral"):

    a. pursuant to Bankruptcy Code §364(c)(2), a first priority, perfected Lien upon all of the Debtor's right, title and interest in, to and under all Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Petition Date;

    b. pursuant to Bankruptcy Code §364(d)(1), a first priority, senior, priming, perfected Lien upon all of the Debtor's right, title and interest in, to and under the Prepetition Collateral; and

    c. pursuant to Bankruptcy Code §364(c)(3), a junior, perfected Lien upon all of the Debtor's right, title and interest in, to and under all Collateral (other than the Prepetition Collateral) which is subject to a validly perfected security interest or lien in existence as of the Petition Date.

Except to the extent expressly set forth in this Paragraph 7 and Paragraph 8, the Liens granted pursuant to this Order and the Loan Documents to Mepco to secure the Obligations shall not be

subordinated to or made pari passu with any other lien or security interest under Bankruptcy Code §364(d).

8. Any provision of this Order or the Loan Documents to the contrary notwithstanding, the Liens and Superpriority Claims granted to Mepco pursuant to the Loan Documents and this Order shall be subject and subordinate to a carve-out (the "Carve-Out") for payment of (i) quarterly fees required to be paid pursuant to 28 U.S.C. §1930(a)(6) and (ii) fees and disbursements payable to any professionals retained a Committee, upon allowance by Order of this Court, in an aggregate amount not in excess of $20,000.00.

9. Immediately upon entry of this Order, the Debtor is hereby authorized to use the Cash Collateral, provided that Mepco, in its capacity as the Prepetition Lender, is granted adequate protection as hereinafter set forth. As adequate protection to Mepco, in its capacity as the Prepetition Lender, for any diminution in the value of the Prepetition Lender's interests in the Prepetition Collateral resulting from (i) the priming of the Prepetition Lender's liens by the Liens granted in the Loan Documents and this Order pursuant to Bankruptcy Code §364(d), (ii) the use of the Cash Collateral pursuant to Bankruptcy Code §363(c), (iii) the use, sale or lease of the Prepetition Collateral (other than the Cash Collateral) pursuant to Bankruptcy Code §363(c), and (iv) the imposition of the automatic stay pursuant to Bankruptcy Code §362(a):

    a. Mepco, in its capacity as the Prepetition Lender, shall be and is hereby granted (effective upon the date of this Order and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid, perfected and continuing, replacement security interests in, and liens on (the "Replacement Liens"), all of the Debtor's right, title and interest in, to and under the Collateral, subject only to (x) the Carve-Out, (y) the Liens granted pursuant to this Order and the Loan Documents to Mepco to secure the Obligations and (z) any validly perfected liens which remain senior (after giving effect to this Order) to the Liens granted to Mepco pursuant to this Order and the Loan Documents in respect of the Obligations;

      b.      Mepco, in its capacity as the Prepetition Lender, shall be and is hereby granted, pursuant to Bankruptcy Code § 364(c)(1), Superpriority Claims, junior only to (x) the Superpriority Claims granted pursuant to this Order to Mepco in respect of the Obligations and (y) the Carve-Out;

      c.      the Debtor is authorized and directed to pay all reasonable fees, costs and charges incurred by Mepco, in its capacity as the Prepetition Lender (including without limitation, the reasonable fees and out-of-pocket disbursements of any financial consultants, and counsel advising the Prepetition Lender in connection with the enforcement and protection of the rights and interests of the Prepetition Lender in the Chapter 11 Cases); and

      d.      in the event that, during the pendency of this Chapter 11 Case, there is a sale or other disposition of any Prepetition Collateral or any Collateral subject to a Replacement Lien (other than sales of inventory in the ordinary course of business) or a recovery resulting from the damage, destruction, or condemnation of Prepetition Collateral or Collateral, and no Default (as defined in the Loan Documents) or Event of Default has occurred and is continuing, Mepco, in its capacity as the Prepetition Lender shall immediately receive payment of any net proceeds, but only after payment or satisfaction in full of the Obligations in accordance with the terms of the Loan Documents.

10.     Notwithstanding that Mepco, in its capacity as the Prepetition Lender, may not be adequately protected pursuant to this Order, Mepco, in its capacity as the Prepetition Lender, nonetheless consents to the use of Cash Collateral upon the terms and conditions of this Order. Notwithstanding any other provision hereof, the grant of adequate protection to Mepco, in its capacity as the Prepetition Lender, pursuant hereto is without prejudice to the right of the Prepetition Lender to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtor or any other party in interest to contest any such modification.

11.     Except as set forth in Paragraphs 7, 8 and 9 above, the Liens and Replacement Liens shall be prior and senior to all liens and encumbrances of all other secured creditors in and to such Collateral granted, or arising, after the Petition Date (including, without limitation, liens

and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit for any liability of the Debtor).

12. Upon the entry of the Final Order, other than the Carve-Out, the Debtor, for itself and its estate, shall not assert a claim under Bankruptcy Code §506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by Mepco upon the Collateral or the Prepetition Collateral. Upon the entry of the Final Order, the Debtor, for itself and its estate, and, by entry of the Final Order, all other parties in interest, are deemed to waive and may not assert any rights, claims and/or benefits under Bankruptcy Code §552(b).

13. The Liens and Replacement Liens granted pursuant to this Order shall constitute valid and duly perfected security interests and liens, and Mepco shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the Liens or Replacement Liens shall in no way affect the validity, perfection or priority of such Liens or Replacement Liens. If, however, Mepco, in its sole discretion, shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Liens or Replacement Liens, the Debtor is directed to cooperate with and assist in such process. The stay imposed by Bankruptcy Code §362(a) is hereby lifted to allow the filing and recording of a certified copy of this Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of this Order.

14. As long as any portion of the Obligations remains unpaid, or any Loan Document remains in effect, the Debtor shall not seek, and it shall constitute an Event of Default (and automatic occurrence of the Termination Date) if the Debtor seeks, or if there is entered, an order dismissing or converting this Chapter 11 Case to a case under another chapter of the Bankruptcy Code. If an order dismissing or converting this Chapter 11 Case under Bankruptcy Code §1112 or otherwise is at any time entered, (a) the Superiority Claims, Liens and Replacement Liens granted pursuant to this Order to Mepco shall continue in full force and effect, shall remain binding on all parties in interest notwithstanding such conversion or dismissal and (b) this Court shall, to the extent permitted by applicable law, retain jurisdiction, notwithstanding dismissal, for the purposes of enforcing such Superpriority Claims, Liens and Replacement Liens.

15. Upon the occurrence and during the continuance of an Event of Default, Mepco may exercise all rights and remedies and take all or any actions without further modification of the automatic stay pursuant to Bankruptcy Code §362 (which is hereby deemed modified and vacated to the extent necessary to permit such exercise of rights and remedies and the taking of such actions) or further order of or application made to this Court in order to: (a) terminate the Secured Postpetition Financing and thereafter cease to make Loans to the Debtor; (b) declare the principal of and accrued interest, fees and other liabilities constituting the Obligations to be due and payable; (c) setoff amounts in accounts maintained with Mepco, or otherwise enforce rights against any other Collateral in the possession of Mepco; and/or (d) exercise any other right or remedy permitted to Mepco under the Loan Documents, this Order or by operation of law; provided, however, Mepco may take the actions described in clauses (c) or (d) above only after providing three business days' prior written notice to the Debtor, its counsel, the United States Trustee and any Committee and provided that no order prohibiting such actions is entered by this

Court during such three business day period.  The Debtor waives any right to seek relief under the Bankruptcy Code, including without limitation, under Bankruptcy Code §105, to the extent any such relief would in any way restrict or impair the rights and remedies of Mepco set forth in this Order and in the Loan Documents, provided that such waiver shall not preclude the Debtor from contesting whether an Event of Default has occurred and is then continuing.

16. The Debtor is authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Loan Documents, as Mepco may reasonably require, as evidence of and for the protection of the Obligations, or which otherwise may be deemed reasonably necessary by Mepco to effectuate the terms and conditions of this Order and the Loan Documents.  The Debtor and Mepco are hereby authorized to implement, in accordance with the terms of the Loan Documents, any modifications of the Loan Documents which are not material and adverse to the Debtor without further Order of this Court.

17. Having been found to be extending credit and making Loans to the Debtor in good faith, Mepco shall be entitled to the full protection of Bankruptcy Code §364(e) with respect to the Obligations and the Liens created or authorized by this Order in the event that this Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal.  Any stay, modification, reversal or vacation of this Order shall not affect the validity of any obligation of the Debtor to Mepco incurred pursuant to this Order.  Notwithstanding any such stay, modification, reversal or vacation, all Loans made pursuant to this Order and the Loan Documents, all uses of the Cash Collateral and all Obligations incurred by the Debtor pursuant hereto or the Loan Documents prior to written notice to Mepco of the effective date of such stay, modification, reversal or vacation, shall be governed in all respects by the original provisions

hereof and Mepco shall be entitled to all the rights, privileges and benefits, including without limitation, the Liens, Replacement Liens and Superpriority Claims granted herein.

18. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in this Chapter 11 Case (and the Obligations shall not be discharged by the entry of any such order or pursuant to Bankruptcy Code §1141(d)(4), the Debtor having hereby waived such discharge); (b) converting this Chapter 11 Case to a Chapter 7 case; or (c) dismissing this Chapter 11 Case, and the terms and provisions of this Order as well as the Superpriority Claims, Liens and Replacement Liens granted pursuant to this Order and the Loan Documents shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims, Liens and Replacement Liens shall maintain their priority as provided by this Order until all of the Obligations and all obligations under this Order are indefeasibly paid in full and discharged.

19. The findings contained in Paragraphs D and E shall be binding upon all parties in interest, including without limitation, the Debtor and any Committee, unless (a) a party in interest (including any statutory committee appointed in this Chapter 11 Case) has filed an adversary proceeding challenging the validity, enforceability or priority of the Prepetition Obligations or Mepco's liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against Mepco on behalf of the Debtor's estate, no later than the date that is sixty (60) days after the later of (i) the Petition Date or (ii) the appointment of a committee of unsecured creditors and (b) the Court rules in favor of the plaintiff in any such timely filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is commenced as of such date, the Prepetition Obligations shall constitute allowed claims, not subject to subordination and otherwise unavoidable, for all purposes in the

Chapter 11 Case and any subsequent Chapter 7 case, Mepco's liens on the Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to subordination and otherwise unavoidable, and the Prepetition Obligations and Mepco's liens on the Prepetition Collateral shall not be subject to any challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including without limitation, any successor thereto. If any such adversary proceeding or contested matter is commenced as of such date, the findings contained in Paragraphs D and E shall nonetheless remain binding and preclusive (as provided in the second sentence of this Paragraph 19) except to the extent that such findings were expressly challenged in such adversary proceeding or contested matter.

20. Entry of this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which Mepco may have against the Debtor or third parties, and without prejudice to the right of Mepco to seek relief from the automatic stay in effect pursuant to Bankruptcy Code §362, or any other relief in the Chapter 11 Case, and the right of the Debtor to oppose any such relief. The provisions of this Order shall be binding upon and inure to the benefit of Mepco, the Debtor, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Case as a legal representative of the Debtor or the Debtor's estate.

21. On or before the third business day following entry of this Order, the Debtor shall mail copies of a notice of the entry of this Order, together with a copy of this Order and a copy of the Motion, to the parties having been given notice of the Preliminary Hearing, to any party which has filed prior to such date a request for notices with this Court and to counsel for any statutory committee of unsecured creditors appointed pursuant to Bankruptcy Code §1102. The notice of entry of this Order shall state that any party in interest objecting to the Postpetition

Financing shall file written objections with the United States Bankruptcy Court Clerk for the Eastern District of Missouri no later than 4:00 p.m. on March 26, 2010. Objections shall be served forthwith thereafter upon: (a) Lathrop & Gage, LLP, 7701 Forsyth Blvd., Suite 400, St. Louis, Missouri 63105, Attention: Robert E. Eggmann, Esquire, Attorneys for the Debtor, (b) Armstrong Teasdale, LLP, One Metropolitan Square, 211 North Broadway, Suite 2600, St. Louis, Missouri 63102, Attention: David L. Going, Esquire, Attorneys for Mepco Finance Corporation, and (c) the Office of the United States Trustee, 111 S. 10th Street, Suite 6.353, St. Louis, Missouri 63102, Attention: Leonora Long, Esquire.

22. The Final Hearing will be held on March 31, 2010 at 10:00 a.m., Central Time, at the United States Bankruptcy Court for the Eastern District of Missouri, Thomas F. Eagleton Courthouse, 111 S. 10th Street, 7th Floor, St. Louis, Missouri 63102.

/s/ Charles Rendlen III
CHARLES E. RENDLEN, III
U.S. Bankruptcy Judge

DATED: March 3, 2010
St. Louis, Missouri

mtc

**Robert E. Eggmann**
Lathrop & Gage
7701 Forsyth Boulevard, Suite 400
Clayton, MO 63105


**Office of U.S. Trustee**
111 South Tenth Street
Suite 6353
St. Louis, MO 63102

**USfidelis**
**Wind-down Budget - February 1 thru June 30**
As of March 1, 2010
$ in thousands

**DRAFT**

| Week Beginning | Fcst 3/1 | Fcst 3/8 | Fcst 3/15 | Fcst 3/22 | Fcst 3/29 | Fcst 4/5 | Fcst 4/12 | Fcst 4/19 | Fcst 4/26 | Fcst 5/3 | Fcst 5/10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash (Includes memo item below) | $ 5 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Credit Card Deposits, net | 10 | 5 | 10 | 5 | 10 | 5 | 10 | 5 | 10 | 5 | 10 |
| Transfer from Reserve to cover ( ) acct bal | | | | | | | | | | | |
| Manual Deposits | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| Total Available Cash | $ 18 | $ 8 | $ 13 | $ 8 | $ 13 | $ 8 | $ 13 | $ 8 | $ 13 | $ 8 | $ 13 |
| **Disbursements** | | | | | | | | | | | |
| **Payroll** | | | | | | | | | | | |
| Commission Draw | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Commision Payroll | - | - | - | - | - | - | - | - | - | - | - |
| Salaried/Hourly Payroll | (230) | - | (175) | - | (220) | - | (150) | - | (190) | - | (120) |
| Total Payroll | $ (230) | $ - | $ (175) | $ - | $ (220) | $ - | $ (150) | $ - | $ (190) | $ - | $ (120) |
| **Operating Expenses** | | | | | | | | | | | |
| Operating Expenses (Utilities, prop taxes, etc.) | $ (100) | $ (74) | $ (34) | $ (54) | $ (80) | $ (40) | $ (40) | $ (40) | $ (40) | $ (65) | $ (38) |
| Legal, Professional Fees, | (54) | (14) | (34) | (34) | (34) | (39) | (29) | (29) | (34) | (44) | (34) |
| Other (Bldg Carrying costs, record retentn, etc) | - | - | - | - | - | - | - | - | - | - | - |
| Warranty Co. Payments (non-MEPCO financed) | - | - | - | - | - | - | - | - | - | - | - |
| Trustee Fees | - | - | - | - | (5) | - | - | - | - | - | - |
| United Medical Healthcare | - | (18) | - | - | - | (18) | - | - | - | (18) | - |
| Total Operating Expenses | $ (154) | $ (106) | $ (68) | $ (88) | $ (119) | $ (97) | $ (69) | $ (69) | $ (74) | $ (127) | $ (72) |
| Net change in cash | $ (366) | $ (98) | $ (230) | $ (80) | $ (326) | $ (89) | $ (206) | $ (61) | $ (251) | $ (119) | $ (179) |
| **Ending Cash** | $ (361) | $ (98) | $ (230) | $ (80) | $ (326) | $ (89) | $ (206) | $ (61) | $ (251) | $ (119) | $ (179) |
| Funding Requirements | 361 | 98 | 230 | 80 | 326 | 89 | 206 | 61 | 251 | 119 | 179 |

# USfidelis
## Wind-down Budget - February 1 thu June 30
As of March 1, 2010

$ in thousands

| Week Beginning | Fcst 5/17 | Fcst 5/24 | Fcst 5/31 | Fcst 6/7 | Fcst 6/14 | Fcst 6/21 | Fcst 6/28 | Total |
|---|---|---|---|---|---|---|---|---|
| Beginning Cash (Includes memo item below) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 5 |
| Credit Card Deposits, net | 5 | 10 | 5 | 10 | 5 | 10 | 5 | 135 |
| Transfer from Reserve to cover ( ) acct bal | | | | | | | | - |
| Manual Deposits | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 54 |
| Total Available Cash | $ 8 | $ 13 | $ 8 | $ 13 | $ 8 | $ 13 | $ 8 | 194 |
| **Disbursements** | | | | | | | | |
| **Payroll** | | | | | | | | |
| Commission Draw | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Commision Payroll | - | - | - | - | - | - | - | - |
| Salaried/Hourly Payroll | - | (160) | - | (75) | - | (95) | (60) | (1,475) |
| Total Payroll | $ - | $ (160) | $ - | $ (75) | $ - | $ (95) | $ (60) | (1,475) |
| **Operating Expenses** | | | | | | | | |
| Operating Expenses (Utilities, prop taxes, etc.) | $ (38) | $ (38) | $ (70) | $ (35) | $ (35) | $ (35) | $ (35) | (890) |
| Legal, Professional Fees, | (34) | (29) | (29) | (34) | (29) | (29) | (39) | (602) |
| Other (Bldg Carrying costs, record retentn, etc | - | - | - | - | - | - | (150) | (150) |
| Warranty Co. Payments (non-MEPCO finance | - | - | - | - | - | - | - | - |
| Trustee Fees | - | - | - | - | - | - | (5) | (10) |
| United Medical Healthcare | - | - | - | (18) | - | - | - | (72) |
| Total Operating Expenses | $ (72) | $ (67) | $ (99) | $ (87) | $ (64) | $ (64) | $ (229) | $ (1,724) |
| Net change in cash | $ (64) | $ (214) | $ (91) | $ (149) | $ (56) | $ (146) | $ (281) | $ (3,005) |
| **Ending Cash** | **$ (64)** | **$ (214)** | **$ (91)** | **$ (149)** | **$ (56)** | **$ (146)** | **$ (281)** | **$ (3,000)** |
| Funding Requirements | 64 | 214 | 91 | 149 | 56 | 146 | 281 | 3,000 |