# IN THE UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| US FIDELIS, INC., | ) Case No. 10-41902-705 |
| | ) |
| Debtor. | ) Hon. Charles E. Rendlen, III |
| | ) |
| | ) JOINT MOTION FOR ORDER APPROVING |
| | ) SETTLEMENTS WITH DEFENDANTS |
| | ) CORY AND HEATHER ATKINSON AND |
| | ) DEFENDANTS DARAIN AND MIA |
| | ) ATKINSON |
| | ) |
| | ) Hearing Date: Oct. 20, 2010 |
| | ) Hearing Time: 10:00 a.m. |
| | ) Hearing Location: U.S. Bankruptcy Court, |
| | ) St. Louis, MO, Courtroom 7-S |
| | ) |
| | ) Objection Deadline: October 18, 2010 |

COMES NOW the duly appointed Official Committee of Unsecured Creditors for US Fidelis, Inc. (the "Committee") and Debtor and Debtor-in-Possession US Fidelis, Inc. (the "Debtor"), by their respective undersigned counsel, and file this *Joint Motion for Order Approving Settlements with Defendants Cory and Heather Atkinson and Defendants Darain and Mia Atkinson*. In support thereof, the movants states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a "core" proceeding under 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

3. The basis for the relief requested is 11 U.S.C. §§ 105(a) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

A. **The Bankruptcy Case and the Adversary Proceedings**

4. On March 1, 2010, Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Committee was formed on or about March 11, 2010.

5. On March 25, 2010, the Committee filed a Complaint filed an adversary proceeding styled as *Official Committee of Unsecured Creditors v. Darain Atkinson, et al.*, Case No. 10-04172 (the "Committee Litigation"), against, among others, Cory Atkinson ("Cory"), Heather Atkinson, Cory's wife ("Heather"), Darain Atkinson ("Darain") and Mia Atkinson, Darain's wife ("Mia"; collectively, Cory, Heather, Darain and Mia are hereinafter referred to as either, the "Settling Defendants", or the "Atkinsons").

6. At the same time, the Committee filed a Motion seeking, *inter alia*, a preliminary injunction prohibiting the Atkinsons from selling, transferring or otherwise disposing of or concealing all or any part of their assets, except as authorized by the Court (the "Preliminary Injunction"). By order, entered April 13, 2010, the Court granted the requested Preliminary Injunction against the Atkinson, which Preliminary Injunction was subsequently by the Court through the conclusion of trial in the Committee Litigation by order, entered September 3, 2010.

7. The overriding purpose of the Preliminary Injunction was to preserve the value of the Settling Defendants' assets for the benefit of Debtor's bankruptcy estate and all creditors thereof.

8. On April 28, 2010, Debtor filed a Complaint initiating that certain adversary proceeding styled as *US Fidelis, Inc. v. Cory Atkinson, et al.*, Case No. 10-41902 (the "Debtor Litigation"), against each of the Atkinsons and certain companies owned by Darain and Cory.

9. The Debtor asserts a variety of claims against the Atkinsons in the Debtor Litigation, all of which were based on the actions taken by Darain and Cory as the owners, officers and directors of Debtor, including claims seeking judgments against each in the amount of at least $101 million.

10. A trial was scheduled on the Debtor Litigation for September 15, 2010. However, the parties were able to avoid trial when they settled their disputes.

11. The Debtor and the Committee, on one hand, and Darain and Mia on the other hand executed and delivered a Settlement Agreement, dated September 29, 2010 (the "Darain Settlement Agreement"), resolving all disputes between the parties thereto (the "Darain Settlement"), subject to approval of the Darain Settlement by the Court. The Darain Settlement is described in more detail below.

12. Likewise, Debtor and the Committee, on one hand, and Heather and Cory on the other hand executed and delivered a Settlement Agreement, dated September 29, 2010 (the "Cory Settlement Agreement"), resolving all disputes between the parties thereto (the "Cory Settlement"), subject to approval of the Darain Settlement by the Court. The Cory Settlement is described in more detail below.

**B. Summary of Debtor Litigation**

13. In the Debtor Litigation, the Debtor drafted and prosecuted both the original Complaint and First Amended Complaint against Darain and Cory, Mia and Heather, and third-party companies related to the Atkinsons. In connection with this work, counsel for the Debtor interviewed current and former employees of Debtor, including the company's former Chief Financial Officers and Chief Executive Officer, and analyzed tens of thousands of internal documents relating to the Atkinsons' governance of the company and transfers of company monies for the benefit of the Atkinsons.

14. During the discovery process for the Debtor Litigation, counsel for the Debtor subpoenaed and examined records from the Atkinsons' attorneys, accountants and financial advisors, participated in the 2004 Examinations of various Atkinson family members, and prepared and produced the Chief Restructuring Officer, Scott Eisenberg, and other employees for deposition. Research and motion practice was conducted in support of the Debtor's claims and discovery, including topics relating to alter ego, corporate waste, fraud, attorney-client privilege, the marital privilege, the privilege against self-incrimination and relief pursuant to the Bankruptcy Code. Default judgment was obtained against the

Atkinson-related third-party companies, Atkinson Construction, LLC, Atkinson Realty, LLC and DC Atkinson Realty, LLC.

15. In preparation for trial, the Debtor conducted an in-depth analysis of transfers from the Debtor for the benefit of Cory, Darain, Heather and Mia, including an analysis of the Debtor monies flowing to third parties and to other Atkinson family members. An investigation of Debtor's financial history and accounting methodology was conducted and the date of insolvency of the Debtor was determined in consultation with the Chief Restructuring Officer in support of the Debtor Litigation. Up until the time of settlement, counsel for the Debtor was setting up witness files, selecting key documents and creating demonstrative exhibits for use at trial. These files and exhibits, along with Lathrop & Gage's asset identification and developed legal theories, form the basis of what would have been a successful conclusion to the litigation.

C. **Committee Investigation Into the Settling Defendants' Assets**

16. The Committee began an extensive investigation into the assets and holdings of each of the Settling Defendants from virtually the moment it was appointed to assist with recovery and evaluation of potential recovery from the Atkinsons. Based on the results of this investigation, the Committee strongly believes that each of the Settlements sought to be approved herein and described in detail below are fair and equitable and in the best interests of Debtor's estate.

17. In order to ensure completeness and accuracy of the information, the Committee did not rely on any one source in order to identify and confirm the existence and ownership of assets by the Atkinsons. The sources relied upon by the Committee in its investigation included personal financial statements, media searches, public records searches, interviews with employees and former employees of the Debtor, Rule 2004 examinations of numerous Atkinson family members, Rule 2004 document requests from various financial institutions, personal interviews with Darain and Cory, individually, regarding their respective assets and independent third-party appraisals, each as detailed below.

18. Early on in the bankruptcy case, the Debtor provided the Committee with electronic copies of emails sent or received by Darain or Cory using the Debtor's email servers. The Committee obtained 66,540 emails sent or received by Darain and 49,706 emails sent or received by Cory. The time period covered was approximately January 1, 2005 through the Petition Date. By importing the emails and utilizing a software program that was word searchable, the Committee was able to develop search criteria to locate potential assets. For example, the Committee located multiple versions of personal financial statements prepared by Darain and/or Cory that were provided to other parties using the Debtor's email system. The Committee also located copies of all personal income tax returns filed by the Settling Defendants since 2003. The emails contained many other helpful documents, such as copies of bank statements, deeds, certificates of title and other similar documents.

19. The Committee also conducted research through a public records database (Westlaw) for information on real property and titled personal property currently or previously owned by the Atkinsons. This public records research confirmed certain information disclosed in other sources and provided the Committee with information about other property that would require additional research to confirm. For example, the Committee searched county real property tax records and obtained letter reports to verify ownership, transfers and the status of title of the various parcels of real property in which the Atkinsons held an interest. A law firm in the Cayman Islands assisted the Committee with investigating the status of ownership of real estate located in the Cayman Islands. The Committee also searched records from Missouri Department of Revenue to confirm information on vehicle and boat ownership and transfers.

20. The Committee took Rule 2004 oral examinations of 13 Atkinson family members and other parties that either appeared to have received transfers from Debtor or that worked for the company in some capacity. The vast majority of these examinations focused on the Atkinsons' personal financial situation, including any assets available to satisfy the claims asserted against the Atkinsons by the Debtor and the Committee. The Committee also issued Rule 2004 document requests and subpoenas on the financial institutions that the Committee believed to have any connection with the Atkinsons or their assets. The Committee obtained and reviewed records from at least 12 financial institutions in which

some or all of the Atkinsons had accounts. These account statements enabled the Committee to refine its search terminology with the email review and, led to the discovery of various bank accounts and other investments.

21.     The Committee, acting through its counsel, visited the St. Louis area homes of both Darain and Cory and interviewed them at length regarding their personal financial position. The Committee also informally interviewed other persons with extensive knowledge of the Atkinsons' personal financial position, including the current Controller of the Debtor and the former President of the Debtor.

22.     The Committee has hired an appraiser (Ivey-Selkirk) to appraise the household goods and jewelry (located in the St. Louis area) of the Atkinsons. Ivey-Selkirk will assist in valuing the household furnishings and jewelry to ensure compliance with the settlement agreement, if approved by the Court, and to provide a basis for valuing the personal property of the Atkinsons.[1]

**D.  Results of Investigation into Settling Defendants' Assets**

    **i.     Darain and Mia Atkinson's Assets**

23.     As part of the settlement, Darain and Mia prepared and submitted under oath an affidavit identifying their assets and holdings. This affidavit is attached to the Darain Settlement (defined below) and attached hereto as part of Exhibit A. The affidavit attached to the Darain Settlement is consistent with the information that discovered by the Debtor and the Committee.

24.     From records reviewed by the Committee, it appears that Darain and Mia spent over $26 million on their home at 5 Lakeview Ct. in Lake St. Louis. Darain and Mia also acquired a $4.5 million home on Rum Point in the Cayman Islands in 2007 and an extensive collection of automobiles, boats, and jewelry. These and similar purchases, together with their general lifestyle, have left Darain and Mia without any significant cash resources at the present time. To verify the Atkinsons' penury, the

---

[1] The Committee also used information published in the press. For example, on April 19, 2009, the St. Louis Post-Dispatch published a list of assets owned by Darain and Cory. The Committee found this article particularly helpful as a starting point for the asset investigation.

Committee subpoenaed records from 12 banks and other financial institutions where Darain and Mia had historically maintained bank records. The Committee reviewed these records and other deposit information to determine whether Darain and Mia were concealing any deposit accounts or other investment assets. The Committee ultimately determined that Darain and Mia are, in fact, virtually without any cash resources.

25. Darain and Mia, however, do own substantial assets free and clear of any liens or other encumbrances. For example, the Committee's investigation reveals that Darain and Mia own the following real estate:

- 5 Lakeview Court, Lake St. Louis, MO (subject to some mechanic's liens)
- 215 Pigeon Drive, Lake St. Louis, MO
- 414 Water Cay Rd, Grand Cayman KY1-1106

26. Darain and Mia also own the following vehicles:

- 2009 Escalade
- 2007 Mercedes S550
- 2009 Ford F-150
- 2007 Toyota Fortuna (in Cayman Islands)

27. Darain and Mia also own the following boats:

- 2004 24 foot Malibu
- 2005 24 foot Harris Boat
- 2005 Searay 500 (in Cayman Islands)
- 2006 Boston Whaler 2700 (in Cayman Islands)
- 2009 Seadoo RXT 255 (in Cayman Islands)
- 2009 Seabob (in Cayman Islands)

28. Darain and Mia also own jewelry with a value (at cost) of over $400,000 and insurance policies with a cash surrender value of in excess of $400,000. The Committee has also engaged Ivey-Selkirk to value the remaining furnishings and fixtures owned by Darain and Mia.

29. Darain also owns an interest in a number of business enterprises, most of them in conjunction with Cory. Most of these business enterprises were connected in some fashion with the operation of the Debtor's business. While the Committee believes that many of these businesses are now defunct and have no value, it appears that a few of the businesses do own substantial assets and that there

may be value to Darain's interests in these businesses. The Committee and the Debtor are presently evaluating these business enterprises and have already begun to liquidate some of their assets.

    **ii.    Cory and Heather's Assets**

30.    As part of the settlement, Cory and Heather have prepared an affidavit identifying their assets and holdings. This affidavit is attached to the Cory Settlement (defined below) and attached hereto as part of Exhibit B. The affidavit attached to the Cory Settlement is consistent with the information discovered by the Debtor and the Committee.

31.    Cory and Heather have significantly more liquid assets than Darain and Mia, including but not limited to numerous investment and deposit accounts. Cory and Heather have banking relationships with U.S. Bank, Missouri Valley Federal Credit Union, and Frontenac Bank. In addition to the foregoing, Cory and Heather have substantial investment accounts, annuities, and mutual funds purchased through Merrill Lynch and Creative Financial Group. These total approximately $9,200,000. Cory and Heather additionally have significant cash surrender value in life insurance policies.

32.    Cory and Heather own the following real estate:

- 302 Atkinson Way, Wentzville, MO
- 45 Via Preminenta, Sunrise Beach, MO
- 1756 Grouse Rdg, Truckee, CA
- 229 Bless Us Drive East, Wentzville, MO
- 505 Lias Way, Wentzville, MO
- 718 Wenstone Crossing Way, Wentzville, MO
- 261 Three Cedars Drive, O'Fallon, MO (deed of trust only)

33.    Cory and Heather own the following vehicles:

- 2009 Cadillac Escalade
- 2009 Dodge Ram
- 2009 Jeep Wrangler
- 2008 Chevy Suburban
- 2005 Ford Mustang
- 2008 Mercedes C350
- 1969 Dodge Super Bee

34.    Cory and Heather own the following boats:

- 2008 Mastercraft X45

- Trailer for Mastercraft
- 2005 Formula
- Seadoos (2)

35. Cory and Heather also own a substantial number of ATVs and motorcycles:

- 2008 Polaris Sportsman XP 850
- 2009 Polaris Sportsman 800
- 2008 Suzuki Quad Sport 450
- 2008 Suzuki Quad Sport 400
- 2006 Kawasaki Brutforce 750
- 2009 Kymco UXV
- 2008 Harley Davidson VRCSCX
- 2009 Harley Davidson Limited
- 2006 Yamaha four wheeler
- 2009 Honda 2 WHL
- 2009 Honda 2WHL
- 2007 KYMC four wheelers (2) (youth size)
- John Deere Tractor

36. Cory also owns an interest in a number of business enterprises, most of them in conjunction with Darain. Most of these business enterprises were connected in some fashion with the operation of the Debtor's business. While the Committee believes that many of these businesses are now defunct and have no value, it appears that a few of the businesses do own substantial assets and that there may be value to Darain's interests in these businesses. The Committee and the Debtor are presently evaluating these business enterprises and have already begun to liquidate some of their assets.

## THE SETTLEMENT TERMS

### A. The Darain Settlement

37. The Committee, the Debtor, Darain and Mia have agreed to resolve all claims brought against Darain and/or Mia in the Committee Litigation and the Debtor Litigation and all other potential claims against Darain and/or Mia. The terms of the Darain Settlement are fully set forth in the Darain Settlement Agreement, a true and accurate copy of which is attached hereto as **Exhibit A** and incorporated by reference herein.

38. A summary of certain of the terms of the Darain Settlement are as follows:[2]

   a. <u>Surrender of Assets</u>. At Closing, Darain and Mia will surrender to the Estate all of their respective right, title and interest in and to all assets (the "D&M Assets") owned by them in any capacity;

   b. <u>Payment to Mia</u>. At Closing, the Estate shall transfer the following assets to Mia (the "Mia Settlement Assets") from the D&M Assets:

      i. $500,000 in cash;

      ii. Jewelry with an appraised liquidation value of no more than $25,000 as established by an appraiser of the Estate's choosing;

      iii. Two vehicles with a NADA trade-in value of no more than $75,000 in the aggregate;

      iv. Bedroom furniture and toys for Darain and Mia's children; and

      v. Other household furnishings and clothing with an appraised liquidation value of no more than $50,000 as established by an appraiser of the Estate's choosing;

   c. <u>Use of Mia Settlement Assets</u>. Mia may not transfer title to any portion of the Mia Settlement Assets to Darain.

   d. <u>Asset Verification</u>. Darain and Mia shall each submit to an examination or deposition under oath by one representative of Debtor and one representative of the Committee regarding the accuracy and completeness of the Financial Statement and the conduct of Darain and Mia's financial affairs from and since January 1, 2002 to the present. Upon request, Darain and Mia must also produce to the Estate any documents within their possession, custody or control pertaining to their financial position or the conduct of their financial affairs. Darain and Mia shall further instruct all attorneys,

---

[2] All capitalized terms used in the subsections to this paragraph and not otherwise defined shall have the respective meanings set forth in the Darain Settlement Agreement.

financial advisors, accountants or other professionals with whom they have in the past retained or consulted to cooperate fully with the Estate's efforts to verify the accuracy and completeness of the Financial Statement or any other issue regarding the conduct of Darain and Mia's financial affairs from and since January 1, 2002 to the present;

e. <u>Consent Judgments</u>. Simultaneously upon the filing of this Motion, Darain shall execute and deliver to the Estate a Consent Judgment in the Debtor Litigation for $50 million, and Mia shall execute and deliver to the Estate a Consent Judgment in the Debtor Litigation for $650,000. The Estate shall hold the Consent Judgments in escrow and will file the Consent Judgments upon the discovery that any of Darain and Mia's disclosures in the Financial Statement and/or the Atkinson Depositions were materially inaccurate or incomplete and compliance with the notice and objection procedures set forth in the Darain Settlement Agreement at paragraph 12.

B. **<u>The Cory Atkinson Settlement</u>**

39. The Committee, the Debtor, Cory and Heather have agreed to resolve all claims brought against Cory and/or Heather in the Committee Litigation and the Debtor Litigation and all other potential claims against Cory and/or Heather. The terms of the Cory Settlement are fully set forth in the Cory Settlement Agreement, a true and accurate copy of which is attached hereto as **<u>Exhibit B</u>** and incorporated by reference herein.

40. A summary of certain of the terms of the Cory Settlement are as follows:[3]

a. <u>Surrender of Assets</u>. At Closing, Cory and Heather will surrender to the Estate all of their respective right, title and interest in and to all assets (the "C&H Assets") owned by them in any capacity;

---

[3] All capitalized terms used in the subsections to this paragraph and not otherwise defined shall have the respective meanings set forth in the Cory Settlement Agreement.

b. <u>Payment to Heather</u>. At Closing, the Estate shall transfer the following assets to Heather (the "Heather Settlement Assets") from the C&H Assets:

   vi. $500,000 in cash;

   vii. Jewelry and other household furnishings and clothing with an appraised liquidation value of no more than $75,000 as established by an appraiser of the Estate's choosing; and

   viii. Vehicles with a NADA trade-in value of no more than $50,000 in the aggregate;

c. <u>529 Plans</u>. Upon approval of the Cory Settlement Agreement by the Court, the Estate and Cory and Heather will work cooperatively so that, in addition to the Settlement Assets, (a) Brenden Atkinson shall retain $100,000 to be held in a qualified "529 account," (b) Kaden Miller shall retain $75,000 in a qualified "529 account," and (c) Caleb Atkinson shall retain $75,000 in a qualified "529 account";

d. <u>Asset Verification</u>. Cory and Heather shall each submit to an examination or deposition under oath by one representative of Debtor and one representative of the Committee regarding the accuracy and completeness of the Financial Statement and the conduct of Cory and Heather's financial affairs from and since January 1, 2002 to the present. Upon request, Cory and Heather must also produce to the Estate any documents within their possession, custody or control pertaining to their financial position or the conduct of their financial affairs. Cory and Heather shall further instruct all attorneys, financial advisors, accountants or other professionals with whom they have in the past retained or consulted to cooperate fully with the Estate's efforts to verify the accuracy and completeness of the Financial Statement or any other issue regarding the conduct of Cory and Heather's financial affairs from and since January 1, 2002 to the present;

e. <u>Consent Judgments</u>. Simultaneously upon the filing of this Motion, Cory shall execute and deliver to the Estate a Consent Judgment in the Debtor Litigation for $40 million, and Heather shall execute and deliver to the Estate a Consent Judgment in the Debtor Litigation for $875,000. The Estate shall hold the Consent Judgments in escrow and will file the Consent Judgments upon the discovery that any of Cory and Heather's disclosures in the Financial Statement and/or the Atkinson Depositions were materially inaccurate or incomplete and compliance with the notice and objection procedures set forth in the Cory Settlement Agreement at paragraph 10.

**RELIEF REQUESTED**

41. Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, the Court may approve a compromise or settlement entered into by a debtor. The Court has authority to approve a settlement proposed by the Committee pursuant to Rule 9019 through the use of its powers under 11 U.S.C. § 105(a) to issue any order "that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. See <u>In re TSIC, Inc.</u>, 393 B.R. 71, 78 (Bankr. D. Del. 2008).

42. The authority to approve a settlement is within the sound discretion of the court. In doing so, the Court must conclude that the compromise is fair and equitable and in the best interests of the estate. <u>Tri-State Fin., LLC v. Lovald</u>, 525 F.3d 649, 654 (8th Cir. 2008). When considering whether a compromise is fair and equitable, a bankruptcy court should consider four criteria: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. See <u>In re Flight Transportation Corporation Securities Litigation</u>, 730 F.2d 1128, 1135 (8th Cir. 1984), *cert. denied*, 469 U.S. 1207 (1985) (*cited in* <u>In re Apex Oil Co.</u>, 92 B.R. 847, 867 (Bankr. E.D.Mo. 1988))<u>Protective Comm. For Indep. Stockholders of TMT Trailer Ferry</u>, 390 U.S. 414, 424 (1968); <u>see also</u> <u>Tri-State</u>, 525 F.3d at 654. The Court need not conclusively determine claims subject to compromise, nor find that the settlement constitutes the best result obtainable. <u>Cosoff vs. Rodman (In re</u>

W.T. Grant Co.), 699 F.2d 599, 608, 613 (2nd Cir. 1983), *cert. denied*, 464 U.S. 822 (1983). The Court needs only determine that the settlement does not fall "below the lowest point in the range of reasonableness." Id. at 608, see also In re New Concept Housing, Inc., 951 F2d 932, 938 (8th Cir. 1991).

43. Each of the Settlement Agreements is fair and equitable. While the Debtor and the Committee believe there is a high probability of success in the Debtor Litigation and the Committee Litigation against each of the Settling Defendants, the delay, expense and inconvenience to the Committee, Debtor and its estate that would result from having to go through a trial and then seek enforcement of a judgment recommend approval of the Settlement Agreements.

44. The Committee and the Debtor both believe that the Settlement Agreements are in the best interests of the bankruptcy estate. Not only do the Settlement Agreements resolve the Adversary Proceedings, negating the inherent risks associated with any litigation, but the Settlement Agreements resolve the expense and difficulty of enforcement. Had there been no settlement and if the Debtor had obtained a judgment against the Settling Defendants, the Debtor and/or Committee would have had to expend considerable time and resources collecting the judgment. These collection activities would have required levying and/or executing on :

(a) 35 cars, boats and other items located in Missouri and the Caymans.

(b) 11 separate pieces of real estate located in Missouri, California and the Caymans.

(c) at least 19 separate bank and other accounts located in various jurisdictions.

45. Approval of each of the Settlement Agreements is in the best interests of Debtor's bankruptcy estate and all of its creditors because they achieve the best possible result without expending the significant amounts of time and money that would be required to go through a trial and then seek enforcement of a judgment.

WHEREFORE, the Committee respectfully requests that this Court enter an Order approving each of the Cory Settlement Agreement and the Darain Settlement Agreement and granting such other and further relief as it deems just and proper.

Dated: September 30, 2010
St. Louis, Missouri

Respectfully submitted,

THOMPSON COBURN LLP

By: */s/ David A. Warfield*
    David A. Warfield (EDMo # 4642)
    dwarfield@thompsoncoburn.com
    Brian W. Hockett (EDMo # 498697)
    bhockett@thompsoncoburn.com
    Allison E. Graves (EDMo # 5217003)
    agraves@thompsoncoburn.com
    One US Bank Plaza
    St. Louis, MO 63101
    Ph. 314.552.6000
    Fax: 314.552.7000

Attorneys for the Official Committee of Unsecured Creditors for US Fidelis, Inc.

and

LATHROP & GAGE LLP

By: */s/ Robert E. Eggmann*
    Robert E. Eggmann, #3044, #37374
    7701 Forsyth Blvd., Suite 400
    Clayton, Missouri 63105
    Telephone: (314) 613-2800
    Telecopier: (314) 613-2801
    reggmann@lathropgage.com
    and
    Brian T. Fenimore, #41308, #497607
    2345 Grand Boulevard, Suite 2200
    Kansas City, Missouri 64108-2618
    Telephone: (816) 292-2000
    Telecopier: (816) 292-2001
    bfenimore@lathropgage.com
    ccox@lathropgage.com

Attorneys for Debtor US Fidelis, Inc.

**Certificate of Service**

       The undersigned hereby certifies that a true and accurate copy of the foregoing was served on all parties receiving notice through the Court's CM/ECF system this 30th day of September, 2010, as follows:

**VIA CM/ECF E-MAIL**

Robert A. Breidenbach on behalf of Darain Atkinson
rab@goldsteinpressman.com

Matthew C Casey on behalf of David Rucker, et al
mcc@caseydevoti.com

Marvin E. Clements on behalf of TN Dept of Comm. and Ins.-Consumer Affairs
agbankcal@ag.tn.gov

Crystanna V. Cox on behalf of US Fidelis, Inc.
ccox@lathropgage.com

A. Thomas DeWoskin on behalf of Mia Atkinson
edmoecf@dmfirm.com, sridge@dmfirm.com;jdoering@dmfirm.com;mbono@dmfirm.com

Spencer P. Desai on behalf of Cory Atkinson
sdesai@desailawfirmllc.com, whickey@desailawfirmllc.com

Robert E. Eggmann on behalf of US Fidelis, Inc.
reggmann@lathropgage.com

Susan K. Ehlers on behalf of Mepco Finance Corporation
sehlers@armstrongteasdale.com

Brian T. Fenimore on behalf of US Fidelis, Inc.
bfenimore@lathropgage.com

David L. Going on behalf of Mepco Finance Corporation
dgoing@armstrongteasdale.com

Scott A. Greenberg on behalf of Fidelis Care New York
sgreenberg@sandbergphoenix.com,, rhileman@sandbergphoenix.com; jnitsch@sandbergphoenix.com; mcculloch@sandbergphoenix.com

John R Hamill on behalf of Barklage, Brett, Wibbenmeyer & Hamill, P.C.
jhamill@barklage-brett.com, cqueen@barklage-brett.com

William Jeffrey Jernigan on behalf of Mississippi Public Service Commission
jeff.jernigan@psc.state.ms.us, jeffjernigan@gmail.com

Peter D. Kerth on behalf of Frisch Masonry, Inc.
pdkerth@gjn.com, djmiller@gjn.com

Jeff Klusmeier on behalf of State of Missouri
Jeff.Klusmeier@ago.mo.gov, Melissa.Conley@ago.mo.gov

Kathryn M. Koch on behalf of Darain Atkinson
kmk@goldsteinpressman.com

Jessica L. Liss on behalf of Benjamin Mantle
liss@rpslaw.com, mccraw@rpslaw.com

Mary C. Lobdell on behalf of the Attorney General, State of Washington
CPTacEF@atg.wa.gov

Cherie K. Macdonald on behalf of R. G. Brinkmann Company
ckm@greensfelder.com

Yuval H Marcus on behalf of Fidelis Care New York
marcus@leasonellis.com

David L. Marcus on behalf of Graves Bartle Marcus & Garrett, LLC
dmarcus@gbmglaw.com, ecf@gbmglaw.com

Richard M. Maseles on behalf of Missouri Department of Revenue
edmoecf@dor.mo.gov

M. Vance McCrary on behalf of Benjamin Mantle
vmccrary@thegardnerfirm.com

Kevin J McGiness on behalf of Benita Bruno
kmcginess@mldclassaction.com, nmarem@mldclassaction.com;pmacuga@mldclassaction.com

James L Moeller on behalf of US Fidelis, Inc.
jmoeller@lathropgage.com, ttroutner@lathropgage.com

James Moloney on behalf of US Fidelis, Inc.
jmoloney@lathropgage.com, lrittenhouse@lathropgage.com

Hal F. Morris on behalf of Texas Attorney General's Office
hal.morris@oag.state.tx.us, matthew.crouch@oag.state.tx.us

Jon S. Musial on behalf of Prestige Administration, Inc.
jon.musial@azbar.org

Office of U.S. Trustee
USTPRegion13.SL.ECF@USDOJ.gov

Mary Elizabeth Olsen on behalf of Benjamin Mantle
molsen@thegardnerfirm.com, apage@thegardnerfirm.com

Lawrence E. Parres on behalf of Prestige Administration, Inc.
lparres@lewisrice.com

Norman W. Pressman on behalf of Goldstein & Pressman, P.C.
nwp@goldsteinpressman.com, secularjew@hotmail.com

Thomas H. Riske on behalf of US Fidelis, Inc.
triske@lathropgage.com, sking@lathropgage.com

Michael C. Seamands on behalf of Diane Breckenridge Interiors, Inc.
mseamands@lashlybaer.com, kvoss@lashlybaer.com

Steven Douglas Shurn on behalf of Tier One Warranty Services
sshurn@hwa.com

David A. Sosne on behalf of First Citizens Bank and Trust Company
dasattymo@scwpclaw.com

David C. Tufts on behalf of Benjamin Mantle
dtufts@thegardnerfirm.com

Tai J. Vokins on behalf of Office of Kansas Attorney General
tai.vokins@ksag.org, melissa.oconnor@ksag.org

Benjamin K Westbrook on behalf of Darain Atkinson
bkw@goldsteinpressman.com

Melissa G. Wright on behalf of Office of the Ohio Attorney General melissa.wright@ohioattorneygeneral.gov

*/s/ David A. Warfield*

**EXHIBIT A**

**<u>Darain Settlement Agreement</u>**

# EXHIBIT B

**<u>Cory Settlement Agreement</u>**