UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| US FIDELIS, INC., | ) | Hon. Charles E. Rendlen, III |
| | ) | |
| Debtor. | ) | Case No. 10-41902 |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION
## OF FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION DATED JUNE 5, 2012

THOMPSON COBURN LLP

By:    /s/  David A. Warfield
　　　　David A. Warfield, 34288MO
　　　　dwarfield@thompsoncoburn.com
　　　　Brian W. Hockett, 52984MO
　　　　bhockett@thompsoncoburn.com
　　　　One US Bank Plaza, Suite 2600
　　　　St. Louis, MO 63101
　　　　Phone: 314-552-6000
　　　　Facsimile: 314-552-7000

　　　　Attorneys for the Official Unsecured Creditors
　　　　Committee

Comes now the Official Unsecured Creditors Committee (the "Creditors Committee") of US Fidelis, Inc. (the "Debtor"), by its counsel, and for its <u>Memorandum of Law in Support of the First Amended Plan of Liquidation</u>[1] respectfully represents as follows:

## I.
## <u>FACTS</u>

The pertinent facts are set forth in the Disclosure Statement, the Plan, and any testimony and declarations that may be adduced or submitted at the Confirmation Hearing. Such facts are incorporated herein as if fully set forth herein.

## II.
## **THE PLAN SATISFIES SECTION 1129 OF**
## **<u>THE BANKRUPTCY CODE</u>**

To achieve confirmation of the Plan, the Creditors Committee must demonstrate that the Plan satisfies Section 1129(a) of the Bankruptcy Code by a preponderance of the evidence. As the United States Court of Appeals for the Fifth Circuit stated in *Heartland Federal Savings & Loan Ass'n v. Briscoe Enterprises, Ltd. II (In re Briscoe Enterprises, Ltd. II):* "The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy} Code leads this Court to conclude that preponderance of the evidence is the [proponent's] appropriate standard of proof under both § 1129(a) and in a cramdown." 994 F.2d 1160, 1165 (5th Cir.), *cert. denied*, 510 U.S. 992 (1993); *see JPMorgan Chase Bank v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221 (Bankr. S.D.N.Y. 2009).

---

[1] The Creditors Committee filed a motion to modify the Plan by interlineation on July 11, 2012 (ECF No. 1147). A hearing on that motion will be held on July 13, 2012. The Creditors Committee assumes that the motion will be granted and all references to the Plan herein should be deemed to refer to the Plan as it will be modified if the motion is granted.

Through evidence to be presented at the Confirmation Hearing, the Creditors Committee

will demonstrate, by a preponderance of the evidence, that all the subsections of Section 1129 of

the Bankruptcy Code have been satisfied with respect to the Plan.

**A.      The Plan Satisfies the Requirements
Under Section 1129(a) of the Bankruptcy Code**

**1.      The Plan Complies with All
Applicable Provisions of the Bankruptcy Code**

Under Section 1129(a)(1) of the Bankruptcy Code, a plan must comply with the

applicable[2] provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(1).  The legislative history

of Section§ 1129(a)(1) explains that this provision encompasses the requirements OF Sections

1122 and 1123 of the Bankruptcy Code governing classification of claims and contents of the

plan, respectively.  *See* H.R. Rep. N. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978);

*see also Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2d Cir. 1988); *In re Drexel*

*Burnham Lambert Group Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992).  As demonstrated

below, the Plan complies fully with the requirements of both sections as well as with all other

provisions of the Bankruptcy Code.

**a.      Classification of Claims and Interest**

Section 1122 of the Bankruptcy Code provides:

(a)      Except as provided in subsection (b) of this section,
a plan may place a claim or an interest in a particular class only if
such claim or interest is substantially similar to the other claims or
interests of such class.

---

[2] The confirmation requirements set forth in subsections (a)(6), (13), (14), (15), and (16) of Section 1129 are not
applicable to the Plan.  11 U.S.C. § 1129(a)(6) concerns the need for government approval of rate changes subject to
government regulatory jurisdictions; § 1129(a)(13) concerns retiree benefits; § 1129(a)(14) concerns debtors
required by order or statute to pay domestic support obligations; § 1129(a)(15) applies to individual debtors; and
§ 1129(a)(16) is only relevant to the mechanism by which certain property is transferred.

11 U.S.C. § 1122(a).  Under this section, a plan may provide for multiple classes of claims or

interests as long as each claim or interest within a class is substantially similar to other claims or

interests in that class.

The Plan provides for separate classification of Claims and Interests in twelve Classes

based upon differences in the legal nature and/or priority of such Claims and Interests.[3]

- Class 1 provides for the separate classification of Non-Tax Priority Claims

- Class 2 provides for the separate classification of WARN Litigation Claims.

- Class 3 provides for the separate classification of Mepco Claims.

- Class 4 provides for the separate classification of Warrantech Claims.

- Class 5 provides for the separate classification of Trade Claims.

- Class 6 provides for the separate classification of Consumer Claims.

- Class 7 provides for the separate classification of Subordinated Governmental Fines and Penalties Claims.

- Class 8 provides for the separate classification of Prestige Claims.

- Class 9 provides for the separate classification of WARN Litigation Class Exclusion Claims.

- Class 10 provides for the separate classification of Intercompany Claims.

- Class 11 provides for the separate classification of Equity Interests.

- Class 12 provides for the classification of the Consumer Objectors

Each of the Claims or Interests in each particular Class is substantially similar to the

other Claims or Interests in such Class.  Accordingly, the classification of Claims and Interests in

---

[3] Administrative Claims and Priority Tax Claims are not classified and are separately treated.

the Plan complies with Section 1122 of the Bankruptcy Code. *See In re Charter Commn'ns*, 419

B.R. at 264 n.35 (explaining that plan proponents "enjoy considerable discretion when

classifying similar claims in different classes").

> ### b.    Contents of the Plan

Section 1123(a) of the Bankruptcy Code sets forth seven requirements with which the

proponent of every chapter 11 plan – other than individual debtors – must comply.[4]  11 U.S.C.

§ 1123(a).  As demonstrated herein, the Plan fully complies with each such requirement.

Article V of the Plan designates Classes of Claims and Interests as required by

Section 1123(a)(1).  Administrative Claims and Priority Tax Claims are not designated.  The

Plan designates eleven Classes of Claims and Interests.  Valid business, factual, and legal

reasons exist for separately classifying the various Classes of Claims and Interests created under

the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests.

Article V of the Plan specifies that Class 1, Class 4, and 12 are unimpaired under the Plan, as

required by Section 1123(a)(1) of the Bankruptcy Code.  Article V of the Plan also designates

Classes 2, 3, 4, 5, 6, 7, and 8 as impaired, and Article V of the Plan specifies the treatment of

Claims and Interests in such Classes, as required by Section 1123(a)(3) of the Bankruptcy Code.

Classes 9, 10, and 11 will receive nothing under the Plan and are deemed to reject the Plan under

Section 1126(g).  The Plan provides for the same treatment for each Claim or Interest in each

respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable

treatment of such Claim or Interest, as required by Section 1123(a)(4) of the Bankruptcy Code.

---

[4] An eighth requirement, set forth in 11 U.S.C. § 1123(a)(8), only applies in a case in which the debtor is an individual.

Article VIII and various other provisions of the Plan, as well as the various documents
and agreements set forth in the Plan Supplement, set forth the means for implementation of the
Plan as required by Section 1123(a)(5), including the establishment of (i) the Consumer
Restitution Fund, and (ii) the Liquidating Trust.  Although the Plan is a liquidating plan that
provides for the dissolution of the Debtor, the Debtor will remain in existence for a short time
after Confirmation.  Accordingly, the Debtor's Restated Certificate of Incorporation will be
amended on the Effective Date to prohibit the issuance of nonvoting equity securities as required
by Section 1123(a)(6).  Scott A. Eisenberg will remain the Debtor's Chief Restructuring Officer,
and such disclosure satisfies Section 1123(a)(7) of the Bankruptcy Code.

Based upon the foregoing, the Plan complies fully with the requirements of Sections 1122
and 1123, as well as with all other provisions of the Bankruptcy Code, and thus satisfies the
requirements of Section 1129(a)(1) of the Bankruptcy Code.

### c.    The Consumer Restitution Fund and the Liquidating Trust

The Plan calls for the establishment and funding of the Consumer Restitution Fund and of
the Liquidating Trust as of the Effective Date.   The purpose of the Consumer Restitution Fund is
to provide distributions to Holders of Consumer Claims and the purpose of the Liquidating Trust
is to provide distributions to Holders of Non-Consumer Claims.

Section 1123(a)(5)(B) of the Bankruptcy Code "appears clearly to contemplate transfer to
an entity such as a liquidating trust organized after confirmation to facilitate distribution to
parties in interest in accordance with a plan." *In re Crowthers McCall Pattern, Inc.*, 120 B.R.
279, 285 n.6 (Bankr. S.D.N.Y. 1990).  Courts have frequently confirmed chapter 11 plans which
provided for liquidating trusts. *See, e.g., In re Okura & Co. (Am.), Inc.*, 249 B.R. 596, 599 n.1
(Bankr. S.D.N.Y. 2000) (on effective date of plan, all property of estate was transferred to

liquidating trust and liquidating trustee was given right to file objections to claims); *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723 (Bankr. S.D.N.Y. 1992); *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279 (Bankr. S.D.N.Y. 1990) (provision of chapter 11 plan indicating debtor was deemed to have assigned to indenture trustee of liquidating trust all right, title, and interest to litigation complied with Section 1123(b)(3)(B)).

2.    **The Creditors Committee has Complied With The Provisions of the Bankruptcy Code**

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponents comply with the applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(2).  The legislative history to Section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under Sections 1125 and 1126 of the Bankruptcy Code.  H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as Section 1125 regarding disclosure.").

The Creditors Committee has complied with the applicable provisions of Title 11, including the provisions of Sections 1125 and 1126 regarding disclosure and plan solicitation. By Order, dated June 4, 1012 (Dkt. #1101)(the "Solicitation Order"), after notice and a hearing, the Court approved the Disclosure Statement pursuant to Section 1125(b) of the Bankruptcy Code as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtor's creditors and equity interest holders to make an informed judgment regarding whether to accept or reject the Plan.  Each holder of a Claim or Interest received the solicitation materials required by the Solicitation Order as evidenced by (i) Certificate of Service filed on June 8, 2012 (Dkt. # 1108),  (ii) the Certificate of Service filed on June 14, 2012 (dkt. # 1110),  (iii) the Certificate of Service filed on June 19,

2012 (dkt. #1114), (iv) the Affidavit of Mailing of Romelia Edwards of The Garden City Group, Inc., sworn to on June 14, 2012 (the "Affidavit of Mailing") (Dkt. #1110), and (v) the Verification of Publication of USA Today (dkt. # 1120).  The solicitation package was transmitted in connection with the solicitation of votes to accept the Plan in compliance with Section 1125 and the Solicitation Order.  11 U.S.C. §§ 1125(b), (c).  The Creditors Committee did not solicit acceptances of the Plan from any creditor or equity interest holder prior to the transmission of the Disclosure Statement.

Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of the Plan.  Under Section 1126, only holders of Allowed Claims in impaired Classes of Claims that will receive or retain property under the Plan on account of such Claims may vote to accept or reject the Plan.  In accordance with Section 1126 of the Bankruptcy Code, the Creditors Committee solicited acceptances of the Plan from the holders of all Allowed Claims in each Class of impaired Claims that are entitled to vote to accept or to reject the Plan.  Since the Plan provides that Classes 9, 10, and 11 will receive no property under the Plan, they are conclusively presumed to have rejected the Plan.  In accordance with Article V of the Plan and the Solicitation Order, the Creditors Committee did not solicit acceptances from Classes 9, 10, and 11.  Based upon the foregoing, the requirements of Section 1129(a)(2) have been satisfied.

### 3.    The Plan Has Been Proposed in Good Faith And Not by Any Means Forbidden by Law

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  "Good faith is generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code."  *In re Chemtura Corp.*, 439 B.R. at 608 (quoting *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984)).

"Whether a [chapter 11] plan has been proposed in good faith must be viewed in the totality of the circumstances, and the requirement of [s]ection 1129(a)(3) speaks more to the process of plan development than to the content of the plan." *Id.* (internal quotations and citations omitted).

In addition to achieving a result consistent with the objectives of the Bankruptcy Code, the Plan also allows creditors to realize the highest possible recoveries under the circumstances. The Plan is the result of consensual resolutions and agreements between the Creditors Committee, the State Attorney General Steering Committee, Mepco, Warrantech and the WARN Litigation Class Claimant. The support of the Plan by the Creditors Committee reflects its acknowledgment that the Plan provides fundamental fairness to general unsecured creditors. *See also Leslie Fay Cos.*, 20 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) ("The fact that the plan is proposed by the committee as well as the Debtor is strong evidence that the plan is proposed in good faith."). Moreover, the Global Settlement Agreement indicates the Creditors Committee genuine efforts to reach consensual resolutions with other parties in interest.

4. The Plan Provides that Payments Made by the Debtors for<br>Services or Costs and Expenses Are Subject to Court Approval

Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, the Debtor, or a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable. 11 U.S.C. § 1129(a)(4). Section 1129(a)(4) has been construed to require that all payments of professional fees which are made from estate assets be subject to review and approval as to their reasonableness by the court. *See River Village Assocs.*, 161 B.R. at 141; *In re Resorts Int'l, Inc.*, 145 B.R. 412, 475 (Bankr. D.N.J. 1990); *In re Texaco, Inc.*, 84 B.R. 893, 908 (Bankr. S.D.N.Y.), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988).

Pursuant to the interim application procedures established under Section 331 of the Bankruptcy Code, the Court authorized and approved the payment of certain fees and expenses

of professionals retained in the Chapter 11 Case.  All such fees and expenses, as well as all other

accrued fees and expenses of professionals through the Confirmation Date, remain subject to

final review for reasonableness by the Court under Sections 327, 328, 330, 331, and 503(b) of

the Bankruptcy Code.

Based upon the foregoing, the Plan complies with the requirements of Section 1129(a)(4)

of the Bankruptcy Code.

**5.      The Creditors Committee Has Satisfied the
Requirement  To Disclose All Necessary
<u>Information Regarding Directors, Officers, and Insiders</u>**

Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the

identify and affiliations of the proposed officers and directors of the reorganized Debtor; that the

appointment of continuance of such officers and directors be consistent with the interest of

creditors and equity security holders and with public policy; and that there be disclosure of the

identity and compensation of any insiders to be retained or employed by the reorganized Debtor.

11 U.S.C. § 1129(a)(5).

The Plan is a liquidating plan that provides for the dissolution of the Debtor after the

Debtor's completion of the acts required by the Plan, and therefore, there will be no "reorganized

debtor" for any presently existing officer or director to serve.  Nonetheless, the Debtor will

remain in existence for a time after the Effective Date and Scott A. Eisenberg will remain the

Chief Restructuring Officer.

**6.      <u>The Plan Is in the Best Interests of All Creditors</u>**

Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of

creditors and stockholders.  The best interests test focuses on individual dissenting creditors

rather than classes of claims.  *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St.*

*P'ship*, 526 U.S. 434 (1999).  It requires that each holder of a claim or equity interests either

accepts the plan or will receive or retain under the plan property having a present value, as of the

effective date of the plan, not less than the amount such holder would receive or retain if the

debtor were liquidated under chapter 7 of the Bankruptcy Code.

Under the best interests test, "the court must measure what is to be received by rejecting

creditors in the impaired classes under the plan against what would be received by them in the

event of liquidation under chapter 7.  In doing so, the court must take into consideration the

applicable rules of distribution of the estate under chapter 7, as well as the probable costs

incident to such liquidation."  *In re Adelphia Commc'ns*, 368 B.R. 140, 252 (Bankr. S.D.N.Y.

2007); *see also 203 N. LaSalle*, 526 U.S. at 440 (explaining that the court "must find that each

[non-accepting] creditor will receive or retain value that is not less than the amount he would

receive if the debtor were liquidated."); *United States v. Reorganized CF&I Fabricators, Inc.*,

518 U.S. 213, 228 (1996).

In the instant case the best interests test is satisfied as to each holder of an impaired

Claim or Interest.  Each member of an impaired Class will receive under the Plan a larger

recovery than that member would otherwise receive in a chapter 7 liquidation because of the

various settlements and compromises described in the Global Settlement Agreement.  Moreover,

the Debtor's costs of liquidation under chapter 7 would include the fees payable to a trustee in

bankruptcy, as well as those fees that might be payable to attorneys and other professionals that

such a trustee might engage.

After consideration of the effects that a chapter 7 liquidation would have on the ultimate

proceeds available for distribution to creditors in the Chapter 11 Case, including (i) the

unwillingness of Warrantech, Mepco and the WARN Litigation Class Claimants to agree to the

concessions they made in the Global Settlement Agreement, (ii) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and its professional advisors that would be unfamiliar with all of the work done to date, (iii) the substantial increases in claims that would occur, and (iv) the substantial delay in distributions occasioned by a conversion of the Chapter 11 Case to a case under chapter 7, it is clear that confirmation of the Plan will provide each holder of an Allowed Claim with a recovery that is not less than such holder would receive or retain if the Debtor was liquidated under chapter 7.

Based upon the foregoing, the Plan satisfies the requirements of Section 1129(a)(7).

**7.      The Plan Has Been Accepted by Impaired
Classes, and as to Such Classes,
The Requirements of Section 1129(a)(8) Have Been Satisfied**

Section 1129(a)(8) of the Bankruptcy Code requires that each class of impaired claims or interests accept the plan, as follows:  "With respect to each class of claims or interests – (A) such class has accepted the plan; or (B) such class is not impaired under the plan."  11 U.S.C. § 1129(a)(8).

The results of the balloting demonstrate that Classes 2, 3, 5, 6, and 7 have voted to accept the Plan. In addition, Classes 1, 4, and 12 are unimpaired and are deemed to have accepted the Plan, and Classes 9,10, and 11 are deemed to have rejected the Plan under Section 1126(f).  The Holder of the sole Class 8 Claim withdrew its proof of claim with prejudice on July 7, 2012 (dkt. # 1133).

**8.      The Plan Provides for Payment
In Full of All Allowed Priority Claims**

Section 1129(a)(9) (A) of the Bankruptcy Code requires that persons holding allowed administrative and priority non-tax claims are entitled to cash payment in full on the effective date of the plan.  In the instant case, Administrative Claims (excluding Professional Claims that

are discussed below) and Allowed Non-Tax Priority Claims will receive Cash payments on the Effective Date.   The Plan also satisfies the requirements of Section 1129(a)(9)(C) of the Bankruptcy Code in respect of the treatment of Priority Tax Claims under Section 507(a)(8) because the Plan calls for holders of Allowed Priority Tax Claims will be paid in full, in Cash, on the Effective Date or as soon thereafter as is reasonably practicable.

Based upon the foregoing, the Plan satisfies the requirements of Section 1129(a)(9) of the Bankruptcy Code.

### 9.    At Least One Class of Impaired Claims Has Accepted the Plan

Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one Class of impaired Claims, "determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10).  The Plan clearly satisfies this requirement because 5 Classes of impaired Claims in Classes 2, 3, 5 6, and 7 have accepted the Plan, without including the acceptance of the Plan by insiders in such Classes.

### 10.    The Plan is Feasible

Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible as a condition precedent to confirmation.  Specifically, it requires that confirmation is not likely to be followed by liquidation of the Debtor, unless such liquidation is proposed in the Plan. 11 U.S.C. § 1129(a)(11).  As described below, and as will be demonstrated at the Confirmation Hearing, the Plan is feasible within the meaning of this provision.  The feasibility test set forth in Section 1129(a)(11) requires the Court to determine whether the Plan is workable and has a reasonable likelihood of success.  *See United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *Kane v. Johns-Manville Corp.*, 843 F.2d at 649.

The key element of feasibility is whether there is a reasonable probability that the provisions of the plan can be performed. The purpose of the feasibility test is to protect against visionary or speculative plans. As noted by the United States Court of Appeals for the Ninth Circuit: "The purpose of Section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985).

In the context of a liquidating debtor, the feasibility test generally seeks to determine whether the payments required under the chapter 11 plan can be made. *See, e.g., In re Journal Register Co.,* 407 B.R. 520, 539 (Bankr. S.D.N.Y. 2009) (explaining that the feasibility test is "whether the things which are to be done after confirmation can be done as a practical matter under the facts") (internal quotation omitted).

For purposes of determining whether the Plan satisfies the above-described feasibility standards, the Creditors Committee has analyzed the ability to fulfill the obligations under the Plan. Since the Plan provides for the liquidation of the Debtor, the Plan is feasible if the Court determines that the proponents will be able to satisfy the conditions precedent to the Effective Date and otherwise have sufficient funds to meet post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Case.

The Creditors Committee will demonstrate that the Debtor will have sufficient assets to satisfy all of their obligations through the complete implementation of the Plan, therefore satisfying the feasibility standard of Section 1129(a)(11) of the Bankruptcy Code.

## 11.    <u>All Statutory Fees Have Been or Will be Paid</u>

Section 1129(a)(12) requires the payment of "[a]ll fees payable under Section 1930 of

Title 28, as determined by the court at the hearing on confirmation of the plan."  11 U.S.C.

§ 1129(a)(12).  Section 507 of the Bankruptcy Code provides that "any fees and charges assessed

against the estate under [Section 1930] of Title 28" are afforded priority as administrative

expenses.  *Id.* § 507(a)(2).  In accordance with Sections 507 and 1129(a)(12) of the Bankruptcy

Code, Section 15.5 of the Plan provides that (i) on the Effective Date such fees shall be paid by

the Debtor and (ii) after the Effective Date, such fees shall be paid by the Liquidating Trustee.

**B.    The Plan Satisfies the "Cram Down" Requirements
       Under Section 1129(b) of the Bankruptcy Code
       <u>With Respect to the Dissenting Classes of Claims and Interests</u>**

Section 1129(b) of the Bankruptcy Code provides a mechanism (known colloquially as

"cram down") for confirmation of a chapter 11 plan in circumstances where the plan is not

accepted by all impaired classes of claims.  Under Section 1129(b), the court may "cram down" a

plan over the dissenting vote of an impaired class or classes of claims or interests as long as the

plan does not "discriminate unfairly" and is "fair and equitable" with respect to such dissenting

class or classes.  Classes 9, 10 and 11 are deemed to reject the Plan.

**1.    <u>The Plan Does Not Discriminate Unfairly</u>**

Section 1129 (b)(1) does not prohibit discrimination between classes.  Rather, it prohibits

discrimination that is unfair.  *See Aetna Cas. & Sur. Co. v. Chateaugay Corp. (In re Chateaugay*

*Corp.)*, 89 F.3d 942, 949 (2d. Cir. 1996).  Under Section 1129(b) of the Bankruptcy Code, a plan

unfairly discriminates where similarly situated classes are treated differently without a

reasonable basis for the disparate treatment.  *See WorldCom Inc.*, Ch. 11 Case No. 02-13533,

2003 Bankr. LEXIS 1401, *174 (Bankr. S.D.N.Y. 2003) (citing *In re Buttonwood Partners, Ltd.*,

111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990).  "[I]f under the facts and circumstances of a particular

case, there is a reasonable basis for disparate treatment of two similarly situated classes of claims or two similarly situated classes of equity interests, there is no unfair discrimination." *See WorldCom* at *174. Accordingly, as between two classes of claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests, *see, e.g., In re Johns-Manville Corp.*, 68  B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988), or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment, *see, e.g., In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 714, 715 (Bankr. S.D.N.Y. 1992) (separate classification of similar classes were rational where members of each class "possess[ed] different legal rights"); *see also Charter Commc'ns*, 419 B.R. at 264-265 (finding separate classification justified because of the members' "disparate legal rights").

The Plan does not "discriminate unfairly" with respect to the "deemed rejecting classes", i.e. Classes 9, 10 and 11. Class 9 consists of Claims of former employees who exercised their rights to opt out of the putative WARN Litigation Class. Based on the Class 9 Claimants' own actions in opting out of the putative class, the Plan fairly treats their claims differently. Class 9 consists of Intercompany Claims, which are, by definition,  insider claims and warrant disparate treatment. Finally, Class 11 consists of Equity Interests owned by Darain and Cory Atkinson. Both Atkinson brothers have pleaded guilty to crimes associated with their involvement with the Debtor and the Plan appropriately and fairly provides that they will receive no distributions on account of the Plan. The treatment of these "deemed rejecting" classes is predicated on sound reasoning and does not treat their claims unfairly. Based upon the foregoing, the Plan does not "discriminate unfairly" with respect to any impaired Classes of Claims or Interests.

2.       **The Plan is Fair and Equitable**

Section 1129(b) of the Bankruptcy Code sets forth the definition of the phrase "fair and

equitable." 11 U.S.C. § 1129(b)(2).   The "fair and equitable" standards are different for

unsecured creditors and equity holders."   A plan is fair and equitable to a class of unsecured

creditors that receives less than full payment if "the holder of any claim or interest that is junior

to the claims of such class will not receive or retain" any property under the plan.  This is the so-

called "absolute priority rule".  The Plan in the instant case satisfies the "absolute priority rule"

because no holder of a claim or interest junior to Classes 9 and 10 will receive any distributions

under the Plan.

Section 1129(b)(2)(C) sets forth the definition of "fair and equitable" for a class of

interests, i.e. shareholders  If shareholders do not receive payment in full of the value of their

interest, a plan must not make a distribution to any class of interests that is junior to the

dissenting claims.  In this case, the only stockholders in US Fidelis are Darain and Cory, who

hold common stock.  There is no class of interest junior to the interests of the common

stockholders.  Therefore, the Plan is "fair and equitable" with respect to Class 11.


**II.
THE SETTLEMENTS, RELEASES, EXCULPATIONS,
AND INJUNCTIONS IN THE PLAN ARE PROPER**

A.       **The Settlements**

The Plan is premised, in large part, on the approval of the Global Settlement Agreement

(the "GSA") that has been executed by the Creditors Committee, the Attorney-General Steering

Committee, Warrantech, Mepco, and the WARN Litigation Class Claimants.

- 17 -

The authority to approve a settlement is within the sound discretion of the court.  In doing so, the Court must conclude that the compromise is fair and equitable and in the best interests of the estate.  Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 654 (8th Cir. 2008).  When considering whether a compromise is fair and equitable, a bankruptcy court should consider four criteria: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.  See In re Flight Transportation Corporation Securities Litigation, 730 F.2d 1128, 1135 (8th Cir. 1984), cert. denied, 469 U.S. 1207 (1985) (cited in In re Apex Oil Co., 92 B.R. 847, 867 (Bankr. E.D.Mo. 1988))Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, 390 U.S. 414, 424 (1968); see also Tri-State, 525 F.3d at 654.  The Court need not conclusively determine claims subject to compromise, nor find that the settlement constitutes the best result obtainable.  Cosoff vs. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608, 613 (2nd Cir. 1983), cert. denied, 464 U.S. 822 (1983). The Court needs only determine that the settlement does not fall "below the lowest point in the range of reasonableness." Id. at 608, see also In re New Concept Housing, Inc., 951 F.2d 932, 938 (8th Cir. 1991).

The settlements embodied in the GSA may be approved using the Flight Transportation standards.  The issues resolved in the GSA are enormously complex and the results of continued litigation are far from certain for the Estate or any of the parties.   This Court has witnessed the seemingly endless parade of parties, claims, legal issues, and general problems in this case over the last two and one-half years.  Without the settlements in the GSA and the Plan, tens of thousands of Consumer Claims would have to be adjudicated through the Chapter 7, a result that

would tax the patience of the Court and test the capabilities of the Clerk's office.  The GSA and

the Plan wrap all of these matters up into one package that enjoys the overwhelming support of

the creditor community.

      **B.**     **Releases**

Article XIII of the Plan sets forth a comprehensive set of releases (collectively, the

"Releases") for the Persons participating in the Plan (the "Releases").   Mepco, which

compromised its approximately $60 million claim against the Debtor and agreed to pay certain to

provide notice of the Plan, receives a releases set forth in Article XIII.  Likewise, Warrantech

receives a release under the Plan in consideration for (a) its contribution of cash to both the

Consumer Restitution Fund and the Liquidating Trust (totaling $2.5 million), (b) its waiver of its

Claims against the Debtor, and (c) payment of funds to provide notice of the Plan.

The Bankruptcy Code explicitly authorizes non-debtor releases only in cases involving

companies with asbestos-related liabilities.  See Section 524(g).  However, under certain

circumstances, courts have approved Chapter 11 plans that release or enjoin litigation against

non-debtors in non-asbestos cases.

The Bankruptcy Court has jurisdiction over claims involving non-debtor third parties

pursuant to its "related-to" jurisdiction provided in 28 U.S.C. §1334(b).  The leading case is

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1094), which held that in order for related-to

jurisdiction to exist over a third party, the "outcome of [a proceeding involving the third party]

could conceivably have any effect on the estate being administered in bankuptcy."  The *Pacor*

court further that "[a]n action is related to bankruptcy if the outcome could alter the debtor'

rights, liabilities, options, or freedom of action (either positively or negatively) and which in any

way impacts upon the handling and administration of the bankrupt estate.  *Id.*  Along with most

of the other Circuit Courts of Appeal, the Eighth Circuit has followed the *Pacor* test.  *In re Dogpatch USA Inc.*, 810 F.2d 782, 786 (8th Cir. 1987).

The approval of releases and the issuance of injunctions preventing non-consenting creditors from suing a non-debtor is within the powers conferred upon the Court under the Bankruptcy Code.  A bankruptcy court's equitable powers are traditionally broad, *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), as it applies the principles and rules of equity jurisdiction.  *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed 281 (1939).  Section 105, a codification of this understanding, is broadly written to allow the entry of any "necessary or appropriate" order to effectuate the provisions of Title 11.  Accordingly, Section 105(a) grants the Court the necessary authority to approve releases in favor of non-debtors and to grant injunctive relief.  *See, In re Airadigm Communications,* 519 F.3d 640, 655 (7th Cir. 2008)*; In re Dow Corning Corp.,* 280 F.3d 648, 6568 (6th Cir. 2002)*; In re Continental Airlines,* 203 F.3d 203, 214 (3rd Cir. 2000)*; In re Matter of Munford, Inc.,* 97 F.3d 449 (11th Cir. 1996)*; Monarch Life Ins. Co. v. Ropes & Gray,* 65 F.3d 973 (1st Cir. 1995)*; In re Specialty Equip. Co.,* 3 F.3d 1043, 1047 (7th Cir. 1993); *In re Drexel Burnham Lambert Group, Inc.*, 690 F.2d 285 (2nd Cir. 1992); *In re A.H. Robins Co.,* 880 F.2d 694, 702 (4th Cir. 1989), cert. denied, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); *In re AOV Indus., Inc.,* 792 F.2d 1140 (D.C. Cir. 1986); *In re Chateaugay Corp.,* 167 B.R. 776 (S.D.N.Y. 1994); *In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994).

Furthermore, a bankruptcy court is able to exercise its broad powers within a plan of reorganization.  Section 1123(b)(6) permits a plan to include "any appropriate provision" which is not inconsistent with the applicable provisions of the Bankruptcy Code.  *See Airadigm*

*Communications*, 519 F.3d at 657.  Accordingly, the release and enjoinment of claims against

non-debtors is not inconsistent with the Code and is authorized by Section 1123(b)(6). *Dow*

*Corning*, 280 F.3d at 656-57.

Although neither the Eighth Circuit nor the District Court in this district has considered

the issue, in at least two prior occasions, Bankruptcy Courts in this district have confirmed plans

containing third party releases.  *In re Union Financial Services Group, Inc.*, 303 B.R. 390, 427-

28, 435 (Bankr. E.D. Mo. 2003) (Schermer, J.) (confirming chapter 11 plan that contained third

party releases);  *In re Trans World Airlines, Inc.*, 185 B.R. 302, 322 (Bankr. E.D. Mo. 1995)

(Schermer, J.) (approving non-debtor releases that were an "integral" part of the plan).

Courts reaching a contrary result have held that Section 524(e) precludes non-debtor

releases.  *See, In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 601 (10th Cir. 1990).  Section

524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any

other entity on, or the property of any other entity for, such debt."  However, the plain and

natural reading of this provision does not "purport to limit" the Court's power to release a non-

debtor from a creditor's claims.  *Airdigm Communications*, 519 F.3d at 656, citing, *Specialty*

*Equipment*, 3 F.3d at 1047; *See, also, In re Chateaugay Corp.*, 167 B.R. 776 (S.D.N.Y.

1994)(§524(e) does not address whether a bankruptcy court can expressly discharge or otherwise

affect the liability of a non-debtor; thus courts may use §105 to grant third party releases where

they are "essential to the reorganization").  Rather, it only explains the effect a debtor's

discharge.[5]  *Dow Corning*, 280 F.3d at 657.  The Court need go no further in its inquiry of its

---

[5] Section 524(e), which speaks only to the "discharge of the debtor," is inapplicable in this case as the debtor
receives no discharge under the Plan.  See, Section 13.13(a) of the Plan.

authority to confirm the Plan containing releases of non-debtor parties.  *See, e.g., United Stated v. Ron Pair Enter., Inc.*, 489 U.S. 235, 240-42, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

"[A] permanent injunction is a rare thing, indeed, and only upon a showing of exceptional circumstances… will this Court even entertain the possibility of a permanent injunction." *Master Mortgage*, 168 B.R. at 937.  Courts may approve third party releases only when the reorganization plan is widely supported by the creditor constituency that includes the parties being restrained, accords significant benefits to that constituency and the court is satisfied that the creditors being restrained also are being treated fairly.  *In re Saxby's Coffee Worldwide LLC*, 436 B.R. 331, 338 (Bankr. E.D. Pa. 2009)([r]estricting the exercise of a non-debtor's legal remedies against another non-debtor against that creditor's will is supported by equity only after the court has considered, in a comprehensive fashion, the impact that confirmation will have on all of the parties affected).  *See also, In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002)(power to release non-debtor can be wielded only under "unusual circumstances"); *In re Continental Airlines*, 203 F.3d at 212 (exception to Section 524(e)'s restriction in "extraordinary cases"; *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005)(circumstances justifying non-debtor releases must "unique").

Although the Eighth Circuit has not directly ruled on third party releases and permanent injunctions, the Missouri Western District Bankruptcy Court compiled a list of specific "factual contexts" to be considered in determining whether non-debtor releases and injunctive relief are fair and necessary.  *Master Mortgage*, 168 B.R. at 934-35.  The *Master Mortgage* test was derived from prior case law and reflects factors considered by other courts. *Id.*  The *Master Mortgage* factors have been cited favorably or are similar to tests used by other courts.  *See, e.g., In re Exide Technologies,* 303 B.R. 48, 71-74 (D. Del. 2003); *In re American Family*

*Enterprises*, 256 B.R. 377, 391-92 (D.N.J. 2000); *In re South Canaan Cellular Investments, Inc.*,

427 B.R. 44, 72 (Bankr. E.D.Pa. 2010); *Saxby's Coffee Worldwide*, 436 B.R. at 336; *In re*

*Mahoney Hawkes LLP*, 289 B.R. 285, 3012-03 (Bankr. W.D. Mass. 2002); *In re Zenith*

*Electronics Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999).

 The five *Master Mortgage* factors or factual contexts upon which the fairness and

necessity of non-debtor releases and injunctions are tested:

- Whether there is an identity of interest between the debtor and the third party, such as an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the debtor;

- Whether the non-debtor has contributed substantial assets to the reorganization;

- Whether the injunction is so essential to the reorganization that without it, there is little likelihood of success;

- Whether a substantial majority of creditors agreed to such injunction; specifically, whether the impacted class or classes, has "overwhelmingly" voted to accept the proposed plan treatment; and

- Whether the plan provides a mechanism for payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*In re Master Mortgage*, 168 B.R. at 934-35 (the court notes that these five requirements are not

conjunctive).

 The Releases in the Plan for Mepco and Warrantech satisfy four of the *Master Mortgage*

elements.   There is an "identity of interest" because US Fidelis did agree prepetition to

indemnify both Mepco and Warrantech.  Both Mepco and Warrantech have contributed

substantial consideration to the reorganization through payment of cash and waiver of claims.

The Releases and accompanying injunctions are absolutely essential to the Plan; neither Mepco

nor Warrantech would have settled with the Estate had the Releases not been offered.  The Plan

was overwhelmingly accepted by creditors: _____% of the voting creditors voted to accept the Plan. The final Master Mortgage factor (that all claims are paid in full) is the only factor that is not satisfied. However, the list of factors is neither exclusive nor conjunctive. *Id.*; *See Dow Corning*, 280 F.3d 648 (6th Cir. 2002)(adding two additional factors: the plan provides an opportunity for those claimants who choose not to settle to recover in full and the bankruptcy court makes specific findings that support its conclusion).

In addition, Section 13.16 the Plan provides that the Debtor and the Estate will release certain claims. Claims held by a debtor against third parties are property of the estate and may be released in exchange for settlement. *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.*, 837 F.2d 89, 91-92 (2d Cir. 1988). When reviewing releases by a debtor in a plan, a court considers whether such releases are in the best interests of the estate. *In re Charter Commc'ns*, 419 B.R. at 257. There can be little doubt that the Section 13.6 releases are in the best interests of the Estate and its creditors because the releases are a necessary component to the global resolution of this highly complex case.

C.    **Exculpation**

Article XIII of the Plan exculpates certain persons associated with the Estate[6] from any actions brought by any Holder of an Allowed Claim or Interest relating to, or arising out of, the Debtor's Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan. The Plan goes on to except from these general exculpation provisions, except for their willful misconduct, gross

---

[6] These persons include (a) the Liquidating Trust, (b) the Liquidating Trustee, (c) the members of the Creditors' Committee in their official capacities, (d) the Professionals (except for the Malpractice Claims), (e) the Attorney General Steering Committee, (e) the Consumer Restitution Escrow Agent, (f) David A. Warfield and Scott A. Eisenberg, in their capacities under the Voting Trust Agreement and with respect to their positions with the Voting Trust Entities, and (g) any of their respective members, officers, directors, shareholders, employees, advisors, attorneys, or agents acting in such capacity on or after the Petition Date

negligence, and ordinary professional negligence, and in all respects the exculpated parties may rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.  Nothing in the Plan prohibits any Person from objecting to an exculpated Person's fee application.

These exculpation provisions are enforceable under the Bankruptcy Code and appropriate under the circumstances.  The Eighth Circuit Bankruptcy Appellate Panel held that the "Bankruptcy Code does not prohibit indemnification or exculpation of professionals hired by creditors' committees or the debtor."  *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 756 (8th Cir. BAP 2002).  Other courts have approved similar exculpation provisions, particularly when they contain carve-outs for gross negligence or intentional misconduct.  These courts reason that the conduct of the indemnified parties has been transparent during the bankruptcy process and that they are loathe to second estate professionals whey they (1) have no personal financial interests in the matter, (2) have reasonable awareness of available information and (3) provide advice in good faith.  *In re Friedman's, Inc.,* 356 B.R. 758, 763 (Bktcy. S.D.Ga 2005).  *See generally United Artists Theatre Co. v. Walton*, 315 F.3d 217 (3d Cir. 2003).

The exculpation provisions in the Plan satisfy these standards.  Willful misconduct, gross negligence and even ordinary professional negligence are carved out from the exculpation language, and nothing in the Plan prohibits a party in interest from objecting to the allowance of compensation.

D.    **Injunctions**

Section 13.13 of the Plan contains several injunctive type provisions (collectively, the "Injunctions").  The Injunctions serve two purposes: (a) to channel the Consumer Claims into the Consumer Restitution Fund, and (b) to prohibit any Person from taking any action inconsistent

with the Plan's provisions, including the Releases discussed above.  Section 1313(c) contains a carve-out from the Injunctions that preserve the rights of Consumers to take all actions necessary to assert their Consumer Claims against the Consumer Restitution Fund and further preserve the rights of all Persons to pursue their claims against Persons that are not Released Parties under the Plan.  Injunctions of this sort are common in Chapter 11 plans and are necessary to appropriate implement the Plan.

## II.

## RESPONSE TO OBJECTIONS TO CONFIRMATION

Two objections to the confirmation of the Plan have been filed and served (collectively, the "Objections," and the objecting parties, the "Objectors").  The Objections were filed by (i) Robert Schulz (ECF # 1139) (the "Schulz Objection") and (ii) Jackie High, Travis Peavy and Loretta Alva[7] (collectively, the "High Objection").   The aggregate amount of the Objectors claims total approximately $11,000.  Rather than pay to bring witnesses into St. Louis to testify at a contested confirmation hearing, the Creditors Committee proposed to modify the Plan to simply pay the Objectors the full amount of their claims at the Effective Date, which renders them unimpaired.

---

[7] The Objectors High, Peavy and Alva are the class representatives in a putative class action filed in  the U.S. District Court for the Northern District of California which names Mepco, the Atkinsons, and others (but not US Fidelis) as defendants.  On July 10, 2012, the Court entered an order clarifying that the High Objectors may prosecute their objections individually but not on behalf of a putative class of Consumers.

V.

**CONCLUSION**

The Plan complies with and satisfies all the requirements of Section 1129 of the

Bankruptcy Code and, therefore, should be confirmed.

THOMPSON COBURN LLP

By:/s/ David A. Warfield_____
    David A. Warfield, #34288MO
    dwarfield@thompsoncoburn.com
    Brian W. Hockett, # 52984MO
    bhockett@thompsoncoburn.com
    One US Bank Plaza, Suite 2600
    St. Louis, MO 63101
    Telephone: (314) 552-6000
    Telecopier: (314-552-7079

Attorneys for the Creditors Committee

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served on all parties receiving notice through the Court's CM/ECF system this 12thday of July, 2012.

/s/ David A. Warfield _____